IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERON GEORGE and SHARICCI FOURTE-DANCY,<br><br>   Plaintiffs,<br><br> v.<br><br>BAY AREA RAPID TRANSIT DISTRICT, and DOES 1 through 20, Inclusive,<br><br>   Defendants.<br>_____/ | No. C 00-2206 CW<br><br>ORDER GRANTING IN PART PLAINTIFFS' SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES, COSTS AND LITIGATION EXPENSES FROM OCTOBER 18, 2003 TO PRESENT |

  Plaintiffs Sheron George and Sharicci Fourte-Dancy have filed a supplemental motion for attorneys' fees in the amount of $924,108 and litigation expenses and costs in the amount of $2,614 for the time period from October 18, 2003 to the present.  Defendant Bay Area Rapid Transit (BART) opposes this motion.  The matter was submitted on the papers.  Having considered all of the papers filed by the parties on the motion, the Court GRANTS Plaintiffs' motion in part, awarding attorneys' fees in the amount of $288,841 and litigation expenses and costs in the amount of $2,614.

BACKGROUND

On June 21, 2000, Plaintiffs, who are or were visually impaired, filed a complaint against Defendant, alleging that it failed to provide equal access to its facilities, as required by the Americans with Disabilities Act (ADA), to patrons who are visually impaired. 42 U.S.C. §§ 12101 et seq. BART is a public entity that provides automated rapid transit services in the San Francisco Bay Area. Plaintiffs alleged that they suffered physical and emotional injuries when attempting to access four different BART stations because the stations are not accessible to the visually impaired.

On June 1, 2001, Defendant moved for summary adjudication, arguing among other things that as a matter of law it is required to provide only one accessible route to all of its disabled patrons, regardless of the nature of their disability. On July 13, 2001, the Court granted Defendant's motion, reasoning that persons with all types of disabilities must be able to access one or more routes; Defendant need not provide another accessible route if an existing route is accessible to the visually disabled.

In April, 2002, following full discovery, the parties cross-moved for summary judgment. The cross-motions raised the issue of whether Defendant's "universal" accessible route is accessible to visually impaired persons. Plaintiffs conceded that they could not identify any way in which the "universal" accessible routes in the stations at issue violated any specific provision of ADA Accessability Guidelines. However, the Court agreed with Plaintiffs that Defendant's "universal" accessible route did not

comply with the Department of Justice (DOJ) regulation that a public entity provide its disabled patrons with "information as to the existence and location of accessible services, activities and facilities."  28 C.F.R. § 35.163.  The Court also agreed with Plaintiffs that the "universal" accessible routes must comply with the DOJ regulation that a public entity "administer services, programs, and activities in the most integrated setting appropriate."  28 C.F.R. § 35.130(d).  The Court rejected Plaintiffs' claim that the only way for Defendant to do so was to make the public route accessible to those with visual impairments. For these reasons, on September 4, 2002, the Court granted in part and denied in part Defendant's motion for summary judgment and granted Plaintiffs' cross-motion for partial summary judgment.

On October 3, 2002, Defendant moved for reconsideration of the Court's decision, arguing for the first time that Department of Transportation (DOT) regulations made its stations accessible as a matter of law regardless of whether they are actually accessible to visually disabled people.  In its January 10, 2003 Order Granting in Part and Denying in Part Defendant's Motion for Reconsideration, the Court agreed that the DOT regulations applied to Defendant's stations, but found that the regulations were arbitrary and capricious in that they did not consider the needs of persons with visual impairments.

Thereafter, the Court ordered the parties to a settlement conference to negotiate Plaintiffs' claims for injunctive relief, damages, and attorneys' fees.  The parties entered into a stipulated agreement on the issues of injunctive relief and

3

damages, but left the issue of attorneys' fees for a further settlement conference or motion before the Court. By stipulation, Plaintiffs filed their motion for attorneys' fees on October 17, 2003. On March 18, 2004, the Court issued its order on Plaintiffs' damages, but stayed the order until all appeals had been exhausted by Defendant. On August 10, 2004, the Court issued its order granting in part Plaintiffs' motion for attorneys' fees, litigation expenses, and costs, awarding Plaintiffs $307,748 in attorneys' fees and $19,879 in litigation expenses and costs. Plaintiffs had moved for $745,798 in attorneys' fees and $19,914 in litigation expenses and costs.

Meanwhile, on April 16, 2004, Defendant appealed the Court's September 4, 2002 order granting in part Plaintiffs' cross-motion for partial summary judgment and the Court's January 10, 2003 order granting in part Defendant's motion for reconsideration. The United States requested and was granted an opportunity to brief and argue as amicus curiae that the DOT regulations implementing Title II of the ADA deserved deference and were not arbitrary and capricious as applied to visually impaired people. On April 21, 2006, the Ninth Circuit issued an order remanding the case to this Court to allow the United States to intervene to defend the DOT regulations. See George v. Bay Area Rapid Transit Dist., 175 Fed. Appx. 809 (9th Cir. 2006) (unpublished opinion).

The United States filed a brief as an intervenor in this action, arguing in support of Defendant's view that the DOT regulations were owed deference and that Title II did not require actual access for visually impaired people. Both parties filed a

4

response to the United States' brief.  Defendant filed a reply to Plaintiffs' response, to which Plaintiffs filed a sur-reply.  The United States also filed a reply to Plaintiffs' response.  On March 20, 2007, the Court again found that the DOT regulations are arbitrary and capricious and are therefore not entitled to controlling weight.  The Court again denied Defendant's motion for summary judgment and again granted Plaintiffs' cross-motion for summary judgment.  On March 22, 2007, the Court amended its judgment to provide that Plaintiffs recover from Defendant $35,000 in damages, attorneys' fees of $307,748, expenses and costs of $19,879, and that Defendant remedy the accessability deficiencies within one year of the date of entry of the order.

On April 3, 2007, Plaintiffs filed this supplemental motion for attorneys' fees, costs and litigation expenses incurred from October 18, 2003 to the present, during the appeal and remand. Plaintiffs seek to recover attorneys' fees since October 17, 2003 in the lodestar amount of $308,036[1] with a 3.0 multiplier.  Thus, Plaintiffs request a total of $924,108 in attorneys' fees.

In support of their request for fees, Plaintiffs submit declarations stating each attorney's hourly billing rate and years of experience and time records indicating the hours billed by their attorneys and staff, which are summarized as follows:

---

[1] $308,036 is the sum of $292,116 requested in Plaintiffs' supplemental motion for work performed from October 17, 2003 to April 3, 2007 and $48,430 requested in Plaintiffs' reply for work performed since April 3, 2007.

5

| Attorney/Staff | Hours Worked | Hourly Rate | Total |
|---|---|---|---|
| Paul Rein | 157.100 | $435 | $ 68,339 |
| Patricia Barbosa | 408.000 | $400 | $163,200 |
| Julie (McLean) Ostil | 208.000 | $275 | $ 57,200 |
| Sidney J. Cohen | 13.178 | $420 | $ 5,535 |
|  | 10.720 | $450 | $ 4,824 |
| Bryce Anderson | 7.0 | $300 | $ 2,100 |
| Scott Holmes | 49.1 | $125 | $ 6,138 |
| Aaron Clefton | 7.0 | $100 | $ 700 |
| Total fees |  |  | $308,036 |

Plaintiffs also request $2,614 in litigation expenses and costs.[2]

DISCUSSION

I.  Legal Standard

Under the ADA's fee-shifting provision, plaintiffs may be awarded, in the Court's discretion, "a reasonable attorney's fee, including litigation expenses, and costs."  42 U.S.C. § 12205. Plaintiffs also seek fees, expenses and costs pursuant to California Civil Code § 54.1 and California Code of Civil Procedure § 1021.5 because they obtained a result in the public interest. The Court analyzes Plaintiffs' motion under the ADA standard, and discusses California law only where it provides for recovery different than the ADA.  <u>Barrios v. Cal. Interscholastic Fed'n</u>, 277 F.3d 1128, 1137 (9th Cir. 2002).

---

[2]  This is net of a $50 reduction for the cost of a book from the amount Plaintiffs originally requested in their supplemental fee motion.

6

A court may decide not to award attorneys' fees where special circumstances would render such an award unjust. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). "The defendant has the burden of showing special circumstances warrant a denial of fees, and the defendant's showing must be a strong one." Herrington v. County of Sonoma, 883 F.2d 739, 744 (9th Cir. 1989).

If the district court determines that an applicant is a prevailing party who should be awarded attorneys' fees, it must determine what fees are reasonable. Barrios, 277 F.3d at 1134. In the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the "lodestar." Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987). The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). There is a strong presumption that the lodestar figure represents a reasonable fee. Jordan, 815 F.2d at 1262.

In calculating a reasonable number of hours, the applicant must justify his or her claim by submitting detailed time records. Chalmers v. Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986). The court may adjust these hours downward if the documentation is inadequate or if the hours are duplicative, excessive, or unnecessary. Id.

In establishing the reasonable hourly rate, the district court should take into account (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, Cabrales v.

7

County of Los Angeles, 864 F.2d 1454, 1464 (9th Cir. 1988), and (5) the contingent nature of the fee agreement. City of Burlington v. Dague, 505 U.S. 557, 562-63 (1992). These factors are subsumed in the initial lodestar calculation, and should not serve as independent bases for adjusting fee awards. Morales, 96 F.3d at 363-64. Reasonable fees are generally calculated according to the prevailing market rates in the forum district. Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

Upward adjustments of the lodestar figure are permissible under federal law, but such modifications are proper only in certain "rare and exceptional" cases, supported by both specific evidence in the record and detailed findings by the lower court. Pennsylvania v. Del. Valley Citizen's Council for Clean Air, 478 U.S. 546, 565 (1986). For example, an upward adjustment of the lodestar may be appropriate in an extraordinary case where the attorneys faced exceptional risks of not prevailing or not recovering any fees. Chalmers, 796 F.2d 1205 at 1212.

The Supreme Court has recognized that, while it is appropriate for the district court to exercise its discretion in determining an award of attorneys' fees, it remains important for the district court to provide "a concise but clear explanation of its reasons for the fee award." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); Hall v. Bolger, 768 F.2d 1148, 1151 (9th Cir. 1985) (in computing an award, the district court should provide a "detailed account of how it arrives at appropriate figures for 'the number of hours reasonably expended' and 'a reasonable hourly rate'") (quoting Blum, 465 U.S. at 898).

8

II. Analysis

The parties agree that Plaintiffs are presumptively entitled to reasonable attorneys' fees under the ADA as the prevailing party. However, Defendant contends that Plaintiffs are entitled to, if anything, no more than $155,986 in attorneys' fees and $365 in costs. First, Defendant argues that, due to Plaintiffs' mismanagement of the case, it would be unjust to award Plaintiffs any fees beyond the $307,748 already awarded. Second, Defendant asserts that it is not responsible for reimbursing Plaintiffs for fees and costs incurred in opposing the United States, an intervenor, on remand to this Court. Third, Defendant contends that Plaintiffs have requested an unreasonable amount in fees and costs. Fourth, Defendant argues that Plaintiffs should not receive a multiplier on their fees. Fifth, Defendant states that Plaintiffs' litigation expenses and costs are inflated.

A.  Plaintiffs' Management of the Case

Plaintiffs prevailed, not on the theories they advanced, but on the Court's ruling that the DOT regulations are arbitrary and capricious. Defendant contends that Plaintiffs should not be rewarded for inefficient litigation and are not entitled to any further attorneys' fees because Plaintiffs could have resolved the case years earlier by arguing that the DOT regulations are arbitrary and capricious.

In its August 10, 2004 Order Granting in Part Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses and Costs, this Court rejected Defendant's argument that it should reduce Plaintiffs' fees because they lost their core claim. The Court

9

reasoned, "The claims upon which Plaintiffs prevailed involve a common core of facts and legal theories related to their unsuccessful claim . . . [W]here Plaintiffs ultimately prevailed on a theory related to one on which they earlier failed, the Court must recompense counsel's time 'devoted generally to the litigation as a whole.'"  (Aug. 10, 2004 Order, Docket # 160 at 18.)  That Plaintiffs ultimately prevailed on a theory related to their unsuccessful ones remains true.  Moreover, although the Court ruled that the DOT regulations are arbitrary and capricious on January 10, 2003, Plaintiffs seek in this supplemental motion reimbursement for work performed since October 17, 2003.  Therefore, work performed during the three years of this case that Defendant asserts were "all for nothing" due to Plaintiffs' mismanagement are not the subject of this supplemental motion.

This argument does not contribute to any showing of special circumstances rendering an award of attorneys' fees unjust.  The Court rejects Defendant's argument that Plaintiffs should not receive additional fees because they won the case on an issue they did not argue.

B.  Fees Incurred in Opposing an Intervenor

Defendant further asserts that it is not responsible for reimbursing Plaintiffs for 147.5[3] hours incurred in opposing the United States, an intervenor, after remand to this Court.

Defendant cites Independent Federation of Flight Attendants v.

---

[3] It is not clear how Defendant arrived at this figure. Schedule A of Defendant's Exhibit A in its response states that a total of 144.4 hours were expended by Plaintiffs after remand.

10

Zipes, 491 U.S. 754, 761 (1989), in which the Supreme Court held that in Title VII employment discrimination cases, a prevailing plaintiff is entitled to attorneys' fees from a losing intervenor only where the intervenor's action was frivolous, unreasonable, or without foundation. Zipes addressed the situation in which a prevailing plaintiff seeks attorneys' fees from a losing intervenor, not the present situation in which a prevailing plaintiff seeks intervention-related attorneys' fees from a losing defendant.

Citing Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 178 (4th Cir. 1994), Defendant argues that Zipes extends to prevent prevailing parties from recovering intervention-related expenses from losing defendants. In Rum Creek, 31 F.3d at 172-74, the plaintiff company challenged a state statute regarding labor disputes and the AFL-CIO intervened on behalf of the defendant police officers. In awarding the plaintiff its attorneys' fees under 42 U.S.C. § 1988, the district court excised intervention-related fees. Id. at 174. The Fourth Circuit affirmed, stating that although "Zipes may have left room to argue that intervention-related fees may be shifted . . . , because the only issue there related to an intervenor's fee liability, we nevertheless conclude that Zipes instructs us not to shift intervention-related expenses to the losing defendant." Id. at 177.

Rum Creek's application to this case is limited; it does not bind this Court, and its reasoning that Defendant asks this Court to adopt is its interpretation of dicta. Moreover, Rum Creek was a

11

Title VII case in which the defendants were state police officers who had enforced the law the plaintiff employer challenged as unconstitutional. In contrast, this is an ADA case in which Defendant was found to have wrongfully discriminated against disabled Plaintiffs. Furthermore, the plaintiff in Rum Creek had appealed the district court's three decisions, including its decision to award the plaintiff part of its fees. It was after one of the plaintiff's appeals that the ALF-CIO entered the case as an intervenor. In the instant case, Defendant, not Plaintiffs, initiated the appeal during which the United States intervened. The evidence also suggests that the United States intervened in this case at Defendant's request. Plaintiffs' counsel, Patricia Barbosa, submits a declaration in which she states that following the filing of Defendant's appeal, she spoke with Karl Geller who works at the DOJ and it "was clear from the discussion that BART had contacted the DOJ to ask for support for BART's argument that the DOT regulations were not 'arbitrary and capricious.'" (July 13, 2007 Barbosa Decl. at ¶ 2.) Defendant benefitted from the United States' intervention because they shared the position that the DOT regulations were not arbitrary or capricious. Defendant's role in and benefit from bringing the United States into this case as an intervenor supports a finding that Defendant is responsible for Plaintiffs' attorneys' fees in opposing the United States. The Court will not excise Plaintiffs' intervention-related fees from their total fees.

  C. Reasonableness of Plaintiff's Request for Fees and Costs
    Defendant contends that Plaintiffs have requested an

12

unreasonable amount of fees and costs. Defendant does not argue that Plaintiffs' counsel's rates are unreasonable. The Court finds that Plaintiffs' counsel's rates are reasonable in the San Francisco Bay Area market in light of each attorney's education, experience, knowledge and qualifications set forth in their supporting declarations. Defendant disputes and the Court considers only the reasonableness of the amount of hours Plaintiffs' counsel have billed.

          1.   Block Billing

Defendant argues that because 202.6 hours of Plaintiffs' counsel's time entries are insufficiently detailed and thus unreliable, compensation for these time entries should be reduced by twenty percent. Defendant contends that these 202.6 hours were "block-billed," that is, billed as a lump sum across two or more discrete tasks so that someone reviewing the record cannot ascertain how much time was charged to complete a specific task. A review of Schedules C through G (Ex. A of Def.'s Response) reveals that Plaintiffs' counsel's time entries for these 202.6 hours are sufficiently specific to determine how much time was charged to complete a specific task; therefore, the Court will not reduce compensation for the hours based on Defendant's claim that the time entries are block-billed.

Similarly, Defendant contends that the time entries by Plaintiffs' counsel's paralegal Scott Holmes are too vague to be compensable. The Court found in its August 10, 2003 Order that Holmes' billing records were sufficiently specific to justify all his claimed hours, and again finds Holmes' billing records to be

13

sufficiently specific.

### 2. Reasonableness of Amount of Hours

Defendant argues next that in comparison to its own counsel's hours, Plaintiffs' counsel have requested an unreasonable amount of hours. Defendant therefore requests that Plaintiffs' counsel's compensable hours litigating the appeal be reduced from 452.45 to 320.9, the amount of hours Defendant's counsel spent on the appeal. Defendant also requests that Plaintiffs' counsel's compensable hours litigating after remand be reduced from 144.4 to 100, which is twice as many hours as Defendant's counsel spent litigating after remand. (Schedule A, Ex. A of Def.'s Response.) The amount of hours Defendant's counsel spent on the appeal and after remand is not a model for the amount of hours Plaintiff reasonably should have spent because of the difference between the outcomes of Plaintiffs' and Defendant's work: Defendant expended fewer hours, but Defendant did not prevail. Furthermore, following the United States' intervention, Plaintiffs' counsel had more work than Defendant's counsel because Defendant's counsel simply agreed with the DOJ's position. The Court will therefore not reduce Plaintiffs' compensable hours on this basis.

### 3. Necessary Party

Defendant also asserts that, if not excluded completely, compensation for the hours Plaintiffs' counsel spent after remand should be reduced by at least half because Plaintiffs' failure to bring in the United States, a necessary party under Federal Rule of Civil Procedure 19, caused the remand. Defendant cites Mercier v. Fraternal Order of the Eagles, 2004 WL 1354362 (W.D. Wis.) in which

14

the district court awarded the plaintiffs slightly less than half of their claimed fees for the second round of briefing and argument because their failure to add a necessary party had caused the second round.

Plaintiffs did not cause the second round of litigation in this case. The United States became a proper intervenor only after Defendant raised for the first time in its October 3, 2002 motion for reconsideration the argument that the DOT regulations made its stations accessible as a matter of law. This argument prompted the Court to find the DOT regulations to be arbitrary and capricious. Apparently at Defendant's request, the United States intervened to protect its interest in the continuing validity of its regulations. The Court will not deduct compensation for the hours Plaintiffs' counsel incurred opposing the United States.

### 4. Hours Spent on This Motion

Defendant argues that Plaintiffs' claim of 65.7 hours spent on this supplemental fee motion, not including the time spent on their reply, is unreasonable; Plaintiffs do not respond to this contention in their reply. (Schedule A, Ex. A of Def.'s Response.) Citing Chalmers, 796 F.2d at 1214, the Court in its August 10, 2004 Order reduced payment for the hours Plaintiffs' counsel claimed for preparing its attorneys' fees motion from 77.6 to fifteen hours due to its considerable overlap with the issues in the July 15, 2003 settlement conference. In Chalmers, the Ninth Circuit found counsel's claim of over ninety hours for a fee motion was excessive in light of the motion's overlap with an appeal for which counsel claimed to have spent over eighty hours preparing. Issues in this

15

supplemental fee motion substantially overlap with those in the previous motion for fees and costs. The Court therefore finds fifteen hours a reasonable amount of time to prepare this supplemental motion, and reduces Plaintiffs' award accordingly.[4] The total hours to be reimbursed are as follows:

| Attorney/Staff | Hours Worked | Hourly Rate | Total |
|---|---|---|---|
| Paul Rein | 148.689 | $435 | $ 64,680 |
| Patricia Barbosa | 376.746 | $400 | $150,698 |
| Julie (McLean) Ostil | 196.966 | $275 | $ 54,166 |
| Sidney J. Cohen | 13.178 | $420 | $  5,535 |
|  | 10.720 | $450 | $  4,824 |
| Bryce Anderson | 7.0 | $300 | $  2,100 |
| Scott Holmes | 49.1 | $125 | $  6,138 |
| Aaron Clefton | 7.0 | $100 | $    700 |
| Total fees |  |  | $288,841 |

D. Multiplier

Plaintiffs assert that under federal law, the Court should apply a 3.0 multiplier to their lodestar amount because the appeal and remand of this case have presented novel legal issues that make it rare and exceptional. In denying Plaintiffs a 2.0 multiplier in its August 10, 2004 order, the Court stated that Plaintiffs' counsel's success in the case was neither extraordinary nor exceptional. Since the appeal and remand, the disposition of the

---

[4] The Court attributes these fifteen hours to the work of Plaintiffs' counsel in proportion to the amount of hours they spent on this motion: 16.59% of the hours, or 2.4885 hours are attributable to Paul Rein, 61.64%, or 9.246 hours are attributable to Patricia Barbosa, and 21.77%, or 3.2655 hours are attributable to Julie Ostil. (Schedule A, Def.'s Ex. A of Def.'s Response.)

16

case has not changed; the Court on remand again ruled that the DOT regulations are arbitrary and capricious.  Because the case continues to be neither rare nor exceptional, the Court will not apply a multiplier to the lodestar.

E.  Litigation Expenses and Costs

Defendant finally argues that the amount Plaintiffs seek in litigation expenses and costs is inflated.  Defendant states that 7,000 pages of xeroxed copies is unnecessary considering that no discovery was conducted during this phase of the case and that a rate of $.25 per page is excessive compared to Defendant's counsel's rate of $.20 per page.  Defendant contends that Plaintiffs are entitled to total litigation expenses and costs of $365.  Both parties agree that Plaintiffs' attorneys' inclusion of a $50 expense for a book was improper.

Considering that there were ninety case filings during the period for which Plaintiffs seek reimbursement and that Plaintiffs' counsel needed to make multiple copies of each filing for their staff and files, 7,000 copies over three and a half years does not appear to be an inflated figure.  Defendant provides no evidence that $.20 per page is its counsel's rate or the market rate.  Plaintiff's rate of $.25 per page is reasonable.  Plaintiffs shall recover $2,614 in litigation expenses and costs which takes into account the $50 reduction for the cost of the book.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion in part, awarding attorneys' fees in the amount of $288,841 and

17

litigation expenses and costs in the amount of $2,614.

IT IS SO ORDERED.

Dated:  9/21/07



CLAUDIA WILKEN
United States District Judge

18

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

GEORGE, ET AL,

        Plaintiff,

v.

BART,

        Defendant.

Case Number: CV00-02206 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 21, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jeffery Lowell Podawiltz
Glynn & Finley
100 Pringle Avenue Ste 500
Walnut Creek, CA 94596

Karl N. Gellert
U.S. Dept. of Justice
Civil Rights Division
RFK Main Blvdg., Rm. 3718
Ben Franklin Station
P.O. Box 14403
Washington, DC 20044-4403

Patricia Barbosa
Law Offices of Paul L. Rein
200 Lakeside Dr Ste A
Oakland, CA 94612

Robert Griggs Schock
Law Office of Robert G. Schock
1970 Broadway
Suite 1200
Oakland, CA 94612

Sidney J. Cohen
Sidney J. Cohen Professional Corporation

19

427 Grand Avenue
Oakland, CA 94610

Dated: September 21, 2007

                                            Richard W. Wieking, Clerk
                                            By: Sheilah Cahill, Deputy Clerk